UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-cv-238

| | )
JAMES EARHART, | )
    Plaintiff, | )
| )
v. | )
| )     **ORDER**
| )
COUNTRYWIDE BANK, FSB, | )
    Defendant. | )
| )

This matter is before the Court pursuant to Defendant's Motion for Partial Summary Judgment (Doc. No. 12) filed on January 30, 2009. Plaintiff filed a Response (Doc. No. 16) and Defendant filed a Reply (Doc. No. 22), which are now before the Court. For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion.

## I.     FACTUAL BACKGROUND

### A.     Earhart received a mortgage from American Mortgage with a 1.25% interest rate

Plaintiff James Earhart is a general contractor. On July 25, 2007, Earhart applied for a $520,000 adjustable rate mortgage[1] with American Mortgage, Inc. ("American Mortgage") for property located at 333 West Boulevard, Charlotte, N.C. The initial interest rate of the note was 1.25% and the initial monthly payment for the first year was $1,377.20 together with escrow payments for taxes and insurance for a total payment of $1,483.24. American Mortgage recorded the deed of trust and adjustable rate rider at the Mecklenburg County Register of Deeds on July

---

[1] This adjustable rate mortgage is a mortgage loan that gives the borrower up to four different payment options each payment period: (1) a minimum required payment; (2) an interest-only payment; (3) an amount sufficient to amortize the loan over a 30-year period; or (4) an amount sufficient to amortize the loan over a 15-year period. (Doc. No. 12-6 at 1).

25, 2007. The adjustable rate rider states that the interest rates may change on September 1, 2007 but that the monthly payments will not change until September 1, 2008. (Doc. No. 16-2 at 16).

On August 10, 2007, Carol Headman, a closing supervisor at American Mortgage, sent a letter to plaintiff stating an intent to re-record the adjustable rate rider because the interest rate was incorrect on page one of the rider. Headman wrote that the interest rate should be 1.75% and that the minimum payment should be $1,507.14. (Doc. No. 16 at 2).

### B. American Mortgage sold Earhart's mortgage to Countrywide and stated that the interest rate was 1.75%

American Mortgage sold Earhart's mortgage loan to Defendant Countrywide Bank ("Countrywide"). On August 10, 2007, Headman sent Countrywide a fax that contained only the first two pages of the adjustable rate rider and the first two pages of the adjustable rate note;[2] both documents reflecting an interest rate of 1.75% per annum, which was fixed until September of 2007.[3] The fax message says, "Revised 1st and 2nd page [sic] of note with corrected note rate & PI. Original being overnighted." (Doc. No. 16-12 at 1). Attached to the note was a letter of intent to rerecord the rate rider because the interest rate was incorrect. (Doc. No. 16-12 at 6). There is no evidence that Countrywide received a signature page of the note.

Sometime after the sale, Earhart received a letter from American Mortgage informing him of the sale and notifying him that his first payment would be $1,483.24 and would be due on October 1, 2007. (Doc. No. 16-3 at 1). In September 2007, Earhart received a billing statement

---

[2] Earhart states that Headman sent the fax to Countrywide in response to Earhart's inquiry in October of 2007. (Doc. No. 16 at 3). The Court notes that the fax was dated August 10, 2007, two months before Earhart's inquiry and four days before American Mortgage sold the mortgage to Countrywide.

[3] In Earhart's deposition, Earhart did not recall signing or initialing the note that was sent to Countrywide, however, Earhart did admit that the initials appeared to match his own initials. In answering whether he had any reason to think that he did not initial it, Earhart responded "no." (Doc. No. 12-3 at 5).

from Countrywide which stated that the interest rate was 1.75% for a forty-year term and required of monthly payment of $1,673.47, including taxes and insurance. Plaintiff paid $1,484.04 and telephoned Countrywide's research department. Earhart spoke with Steven Winters regarding the discrepancy in interest rates and monthly payments.[4] (Doc. No. 16-9 at 1). Winters told Earhart that the fraud department would address the payment and interest discrepancy. (Doc. No. 16-8 at 2). Earhart continued making payments of $1,484.04 while continuing to telephone Countrywide about the discrepancies.[5]

On December 11, 2007, Earhart spoke with Kathleen Stevenson, a member of Countrywide's research department. (Doc. No. 16-8 at 2). Stevenson told Earhart that his account would be blocked as fraud because Earhart's signed initials did not match others on the note. (Doc. No. 16-8 at 2). Stevenson also told Earhart that no action would be taken on the mortgage until after the fraud department completed the investigation. (Doc. No. 16-8 at 2).

On October 30, 2007, after Countrywide's investigation, Countrywide concluded that Earhart's signature on the Note provided to it by American Mortgage was genuine, and that it had made no error, either with respect to the loan's initial interest rate or the amount of the initial minimum payment amount. (Doc. No. 22 at 1). Countrywide's computer log indicates that Earhart was informed that the investigation was closed.[6] (Doc. No. 22-2).

---

[4] Countrywide argues that Earhart cannot rely in his affidavit on conversations with employees at Countrywide because the contents of the conversations constitute inadmissable hearsay. (Doc. No. 22 at 6). The Court finds that the contents of the conversations are nonhearsay and are admissible as admissions by a party-opponent under Federal Rule of Evidence 801(d)(2).

[5] Earhart provides a very extensive list of telephone calls he made to Countrywide regarding his account between September 2007 and September 2008. (Doc. No. 16-8 at 5-11).

[6] Earhart claims that he was never told that the investigation was closed. (Doc. No. 16 at 6).

On January 16, 2008, Countrywide sent Earhart a notice of default and acceleration that stated he owed a balance of $2,250.32. (Doc. No. 16-17). Earhart's counsel objected to this notice and sent Countrywide documents showing that the minimum payment was $1,483.24. (Doc. No. 16-16). In January and February of 2008, Countrywide reported to the credit agencies that Earhart's account was thirty days past due. (Doc. No. 12 at 2).

### C. Earhart was denied financing for various other construction projects

Earhart had four construction projects planned for 2008. He planned to develop a thirty-eight acre subdivision on Parkton Road, construct two build-to-suit houses, and build a residence for himself. Earhart had entered into a purchase contract to buy the land for the Parkton Road subdivision for $950,000. (Doc. No. 16-19). The land had an appraised value of $2 million. Earhart had contracted with a surveying company to provide surveying, civil engineering, planning, environmental, and other construction services for the subdivision and owed the company $23,895.15. (Doc. Nos. 16 at 7; 16-8 at 17).

In February 2008, Earhart contacted Jeff Bedian, a senior loan officer with East Coast Mortgage Lending, to obtain financing for these projects. Bedian pulled Earhart's credit report and discovered that Earhart's mortgage was thirty days past due. (Doc. No. 16-23 at 1). Bedian submitted Earhart's credit report to various lenders to obtain a $3.5 million loan for the subdivision. Earhart's loan application was denied. Bedian testified that lenders were not interested in loaning money to Earhart because of the negative reporting by Countrywide. (Doc. No. 16-24 at 1).

## II. PROCEDURAL HISTORY

Earhart filed this lawsuit on April 22, 2008, asserting claims for violations of the Fair Credit Reporting Act ("FCRA") and North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and breach of contract. Earhart also sought a declaratory judgment that the note provides the monthly payment is fixed for the first year at $1,483.24. Countrywide subsequently reported on Earhart's credit report that Earhart was thirty days past due two times and that Earhart disputed this information. (Doc. No. 16-27). After filing this action, in May 2008, Earhart applied through Bedian to refinance one of his mortgages. Plaintiff was denied the loan. Bedian testified that the loan was denied because of the negative reporting of Countrywide, even though the credit report reflected that Earhart disputed the account. (Doc. No. 16-28 at 2).

Countrywide moves for summary judgment as to the claims under the FCRA and the UDTPA. Countrywide also requests that the Court enter an order granting summary judgment in its favor on Earhart's claim for actual damages, including lost profits. Countrywide does not move for summary judgment on the liability portion of Earhart's breach of contract claim.

## III. STANDARD OF REVIEW

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once this initial burden is met, "the burden shifts to the nonmoving party to show that there are genuine issues of material fact." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). The party opposing a motion for summary judgment may not rest upon mere allegations or denials in his pleadings, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); see Anderson, 477 U.S. at 252 (explaining that a "mere existence of a scintilla of evidence" is insufficient to overcome summary judgment). "[T]he non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 252). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Fair Credit Reporting Act

#### 1. **Earhart cannot bring a private right of action under 15 U.S.C. § 1681s-2(a)**

In the Complaint, Earhart alleges that Countrywide violated the FCRA by "falsely report[ing] to the credit reporting agencies that Plaintiff is in default under the terms of the note. This report is false and Defendant knew the report was false when it was made. As a result of this false report, Plaintiff has sustained damages in excess of $10,000." (Doc. No. 1-2 at 3).

Section 1681s of the FCRA prohibits a "person" from furnishing information "relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Countrywide falls within the FCRA's definition of "person." See 15 U.S.C. § 1681(a)(b). Although Earhart's claim falls with § 1681s-1(a)(1)(A), there is no private right of action for violation of that section. Rossmann v. Lazarus, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept 3, 2008); see also Beattie v. Nations Credit Fin. Servs. Corp., 65 Fed App'x 893, 897 (4th Cir. 2003) (unpublished) (Section 1681s-2(a)(1)(A) "may be enforced only by federal and state agencies and officials.").

### 2. A genuine issue of material fact exists as to whether Countrywide acted with malice

Earhart does not dispute that there is no private right of action under § 1681s-2(a). Instead, Earhart alleges that he brings this action for defamation under Section 1681h(e) of the FCRA.[7] (Doc. No. 16 at 11-12). Section 1681h(e) prevents individuals from bringing claims "in the nature of defamation" against "any person who furnishes information to a consumer agency . . . except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e). "[N]o defamation action or like actions are allowed under the Act unless malice or willful intent is alleged." Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980). The Fourth Circuit has not expressly ruled on how the preemption clause is to be interpreted,

---

[7] The defendant objects that plaintiff's defamation claim should be excluded as untimely raised. "Under the liberal pleading requirements of the Federal Rules of Civil Procedure, it is not necessary for a plaintiff to set out in detail the facts upon which her claim is based. All that is required in a pleading is a "a short and plain statement of the claim showing that the pleader is entitled to relief." Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) (quoting Fed. R. Civ. P. 8(a)(2)). A complaint need only provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Under well recognized principles of notice pleading, the Complaint, first claim of relief, sets forth sufficient allegations to notify the defendant that plaintiff sets forth a defamation claim.

7

"but the general trend among district courts of the Fourth Circuit is to read § 1681h(e) as preempting certain state common law claims." Joiner v. Revco Disc. Drug Ctrs., Inc., 467 F. Supp. 2d 508, 513 (W.D.N.C. 2006).

To maintain a defamation claim, Earhart must establish that the information reported to the credit agency was false. The parties dispute whether the information reported to the credit agencies was false, and therefore there is a genuine issue of fact as to whether the credit information was false.

Earhart must also raise a material issue of fact as to whether Countrywide acted with malice by reporting the false information to the credit agencies. When considering the presence of malice under the FCRA, the Court must adhere to the local common law definition of malice." Id. at 514. In North Carolina, actual malice, for purposes of defamation cases, is defined as "ill-will or personal hostility on the part of the declarant . . . or by showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity." Barker v. Kimberly-Clark Corp., 524 S.E.2d 821, 825 (N.C. Ct. App. 2000) (internal quotation marks omitted). "[W]here the factual dispute concerns actual malice, . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (1986); see also Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 685 (1989) ("The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.").

When Countrywide reported to the credit agencies in January and February 2008, Countrywide did not have a complete note reflecting the 1.75% interest rate. Countrywide only possessed the first two initialed pages without the borrower's signature page. Additionally, when Countrywide initially reported to the credit agencies, it failed to report that the account was still in dispute. In viewing the evidence in the light most favorable to the plaintiff, the Court finds that there is a genuine issue of material fact as to whether Countrywide acted with malice in reporting to the credit agencies. Therefore, Countrywide's motion for summary judgment is denied as to plaintiff's claim under Section 1681h(e) of the FCRA.

  **B. North Carolina's Unfair and Deceptive Trade Practices Act**

Countrywide next moves for summary judgment on Earhart's claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Earhart concedes that the FCRA preempts Earhart's unfair or deceptive trade practices claim with respect to Countrywide's conduct in reporting the negative information to the credit reporting agencies. (Doc. No. 16 at 13); see Joiner v. Revco Drug Ctrs., Inc., 467 F. Supp. 2d 508, 517-19 (W.D.N.C. 2006). Nonetheless, Earhart argues that he may assert a claim for unfair and deceptive trade practices based upon Countrywide's breach of contract. (Doc. No. 16 at 14).

To establish a claim under North Carolina's UDTPA, a claimant must show: (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to plaintiffs. N.C. Gen. Stat. § 75-1.1(a). "Ordinarily, under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act; however, aggravating circumstances, such as deceptive conduct by the breaching party, can trigger the provisions of the Act." Cullen v. Valley Forge Life Ins., Co., 589 S.E.2d 423, 430 (N.C. Ct. App. 2003) (internal quotation marks

9

omitted).

### 1. Earhart cannot maintain the UDTP claim without proof of deception

In interpreting North Carolina's UDTPA, the Fourth Circuit recognized that "unfairness inheres in every breach of contract when one of the parties is denied the advantage for which he contracted." United Roasters, Inc. v. Colgate-Palmolive, Co., 649 F.2d 985, 992 (4th Cir. 1981). Thus, even an intentional breach of a valid contract does not violate the statute. Id. The breach of contract must be characterized by some type of egregious or aggravating circumstance. Norman Owen Trucking v. Morkoski, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998). "Applicable aggravating circumstances include conduct of the breaching party that is deceptive." Poor v. Hill, 530 S.E.2d 838, 845 (N.C. App. Ct. 1998).

Earhart alleges that there is a triable issue of fact as to whether Countrywide's acts were deceptive in breaching the contract. Earhart alleges that he was deceived into believing that Countrywide was investigating the discrepancy in interest rates and that the resolution of the claim would be in his favor. (Doc. No. 16 at 14). With no notice, Countrywide declared the mortgage in default. (Doc. No. 16 at 14).

Earhart does not dispute that Countrywide performed an investigation. In fact, Earhart's affidavit shows numerous conversations with Countrywide concerning the investigation. (Doc. No. 16-8). Additionally, Countrywide's communications log provides several entries about how the company was proceeding with the investigation. Without any evidence of deception, Earhart cannot proceed with his UDTPA claim. Therefore, the Court grants summary judgment in favor of Countrywide as to the UDTPA claim.

C.   **Lost Profits**

Lastly, Countrywide moves for summary judgment with respect to Earhart's claim for actual damages, including lost profits. The only claim for actual damages that Earhart makes is in relation to lost profits associated with the Parkton Road subdivision. (Doc. No. 16 at 15-16).

While the proper amount of damages is generally a question of fact, the proper standard with which to measure those damages is a question of law. Olivetti Corp. v. Ames Bus. Sys., Inc., 356 S.E.2d 578, 586 (N.C. 1987). In order to recover damages for lost profits, a complainant must prove that, absent the breach of contract, profits would have been realized in an amount provable with "reasonable certainty." Id. at 585.

In order for lost profits to be proven to a reasonable certainty, an estimate of the lost profits must be based on facts. Tillis v. Calvine Cotton Mills, Inc., 111 S.E.2d 606, 613 (N.C. 1959). "A witness will not be permitted to give a mere guess or opinion, unsupported by facts, as to the amount of damages arising upon a breach of contract." Id. "[L]ost profit will not be awarded based upon hypothetical or speculative forecasts of losses. Iron Steamer, Ltd. v. Trinity Restaurant, Inc., 431 S.E.2d 767, 770 (N.C. Ct. App. 1993); see also Catoe v. Helms Constr., & Concrete Co., 372 S.E.2d 331, 335 (N.C. Ct. App. 1988) (plaintiff's testimony providing an estimate of anticipated profits is not enough of a factual basis for the issue to reach a jury).

While evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion, "absolute certainty is not required." Perfecting Service Co. v. Prod. Dev. & Sales Co., 131 S.E.2d 9, 22 (N.C. 1963). Lost profits "may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analysis, and business records of similar enterprises." McNamara v. Wilmington

11

Mall Realty Corp., 466 S.E.2d 324, 410 (N.C. Ct. App. 1996) (quoting Iron Steamer, Ltd., 431 S.E.2d at 771).

There is no bright-line rule in determining what amount of evidence is sufficient to establish lost profits. Rather, courts "have chosen to evaluate the quality of evidence of lost profits on an individual case-by-case basis in light of certain criteria to determine whether damages have been proven with 'reasonable certainty.'" Iron Steamer, 431 S.E.2d at 770.

### 1. Earhart provides insufficient evidence to establish his claim for lost profits

Earhart asserts that his loan application to purchase the Parkton Road subdivision was denied as a result of Countrywide's breach of contract. (Doc. No. 16 at 15). The only evidence offered in support of that assertion is the testimony of Jeff Bedian, senior loan officer with East Coast Mortgage Lending. (Doc. No. 16 at 7-9). However, as the Countrywide rightly points out, (Doc. No. 22 at 7), Bedian's testimony about the reasons lenders would not loan money to Earhart is inadmissable hearsay. Fed. R. Evid. 801(c). To establish Earhart's claim for lost profits, the statements of the lenders is offered for the truth of the matter asserted through Bedian. Admissible evidence would be the testimony of the lenders themselves.

In order to withstand a motion for summary judgment, plaintiff must proffer admissible evidence to establish his claim. Fed. R. Civ. P. 56(e). Because Earhart relies exclusively on Bedian's inadmissable hearsay testimony, Earhart's evidence is insufficient as a matter of law to support his lost profits claim. Greensboro Prof. Fire Fighters Ass'n v. Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Therefore, the Court grants Countrywide's motion for summary judgment as to the claim for actual damages, including lost profits.

V.   **CONCLUSION**

The Court finds that Earhart failed to produce enough evidence to maintain a claim under UDTPA and to maintain a claim for lost profits.  Earhart has raised a genuine issue of material fact relating to his claim under Section 1681h(e) of the FCRA.

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  The following claims of plaintiff are **DISMISSED**:

1. Plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim; and
2. Plaintiff's claim for actual damages, including lost profits.

Signed: February 25, 2009

Robert J. Conrad, Jr.
Chief United States District Judge