# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08-cv-238-RJC

| | |
|---|---|
| JAMES EARHART, <br>     Plaintiff, <br><br> v. <br><br> COUNTRYWIDE BANK, FSB, <br>     Defendant. | ORDER |

**THIS MATTER** is before the Court on Plaintiff's motion to certify an interlocutory appeal ("motion to certify") (Doc. No. 34), Plaintiff's motion to amend the summary judgment order or in the alternative, motion for relief from dismissal of a claim ("motion for reconsideration") (Doc. No. 41), and Defendant's motions to strike (Doc. Nos. 45 & 47). In a reply brief, Plaintiff withdrew his motion to certify. (Doc. No. 44 at 13). For the reasons explained below, the Court **DENIES** Plaintiff's motion for reconsideration and **GRANTS** Defendant's motion to strike (1) Jeff Bedian's second affidavit, (2) James Wright's affidavit, (3) Erica Lane's affidavit, (4) the appraisal report and (5) the arguments in Plaintiff's reply brief concerning North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA").

## I.   BACKGROUND

Plaintiff James Earhart argues that the Court committed clear error by finding that the testimony and evidence of Jeff Bedian, Earhart's mortgage broker, constituted inadmissible hearsay. Earhart argues that he would have been able to obtain financing to purchase the Parkton Road subdivision if Defendant Countrywide Bank, FSB ("Countrywide") had not falsely reported to various credit agencies that Earhart's account was thirty days past due. Earhart relied on the

statements of credit denial and testimony of Bedian to show that the lenders denied credit based on Countrywide's false reporting.

## II. PROCEDURAL HISTORY

Earhart filed this lawsuit against Countrywide on April 22, 2008, asserting claims for breach of contract and for violations of the Fair Credit Reporting Act ("FCRA") and the UDTPA.

Countrywide moved for summary judgment as to the claims under the FCRA and the UDTPA. Countrywide also requested that the Court enter an order granting summary judgment in its favor on Earhart's claim for actual damages, including lost profits. Countrywide did not move for summary judgment on the liability portion of Earhart's breach of contract claim.

On February 25, 2009, the Court issued an order that granted Countrywide's motion for summary judgment as to Earhart's claim for actual damages and the UDTPA claim, and the Court denied Countrywide's motion as to the FCRA claim. (Doc. No. 33). The Court found that Earhart provided insufficient evidence to establish deception as required by the UDTPA. The Court also found that Earhart relied exclusively on inadmissible hearsay testimony to establish his lost profits claim. In response, Earhart filed a motion to certify the Court's dismissal of the two claims. (Doc. No. 34). On February 27, 2009, the Court denied Earhart's motion, finding that the Court's February 25, 2009 order did not involve a controlling question of law about which there is substantial ground for a difference of opinion. (Doc. No. 39 at 2). On March 2, 2009, the day before trial, Earhart filed a motion for reconsideration pursuant to Rules 59(e) and 60(b)(1) and (6) of the Federal Rules of Civil Procedure. (Doc. No. 41). In the motion, Earhart requested that the Court reconsider its February 25, 2009 order that granted summary judgment for his lost profits claim. On March 4, 2009, the Court issued an order requiring Countrywide to file a response brief to Earhart's motion

for certification and motion for reconsideration. (Doc. No. 42). The Court also ordered Earhart to file a reply brief. The parties have fully briefed the issues (Doc. Nos. 43 & 44), which are now ripe for review.

## III. MOTION TO RECONSIDER UNDER RULE 59(e)

Rule 59(e) permits a party to petition a court to alter or amend its judgment within "10 days after the entry of the judgment." Fed. R. Civ. P. 59(e). There are three grounds which may warrant a court's consideration of a motion to amend or alter a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Project Control Servs. v. Westinghouse Savannah River Co., 35 Fed. App'x. 359, 365 (4th Cir. 2002) (quoting EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997)). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). A Rule 59(e) motion to amend a judgment "is an extraordinary remedy which should be used sparingly." Id. (citation omitted).

### A. Whether the Court should reconsider its decision to exclude the statements of credit denial as inadmissible hearsay

Earhart argues that the Court committed clear error by finding that the statements of credit denial prepared by Bedian constituted inadmissible hearsay. Earhart acknowledges that the statements of credit denial contain double hearsay because the lenders' statements within the statements of credit denial are hearsay.

3

"Federal Rule of Evidence 805 requires that all levels of hearsay satisfy exception hearsay requirements before the statement is admissible." Wilson v. Zapata Off-Shore Co., 939 F.2d 260, 271 (5th Cir. 1991). Earhart argues that the statements of credit denial meet the requirements of a business record under Rule 803(6) and that the statements from lenders within the statements of credit denial are admissible under the residual exception to hearsay.

### 1. Business Record Exception - Rule 803(6)

Rule 803(6) of the Federal Rules of Evidence provides that "Records of Regularly Conducted Activity" are not excluded under the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). The theory behind the business records exception is that "reports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 204-05 (4th Cir. 2000). Business records are considered trustworthy because "businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful" and because "routine and habitual patterns of creation lend reliability to business records." Id. at 205. (citation omitted)

Bedian testified that he prepared the statements of credit denial once he received notification from lenders that they would not loan Earhart money. (Doc. No. 20-11 at 2). Bedian also testified

4

that the statements of credit denial are forms provided by East Coast Mortgage Lending and that it is the regular practice of mortgage officers at East Coast Mortgage Lending to prepare statements of credit denial when an applicant is denied credit.[1] (Doc. No. 46 at 4). The Court finds that the first level of hearsay falls within the business records exception.

 2. **Residual Exception - Rule 807**

Although the statements of credit denial are business records, the information contained within the statements is based on out of court statements by unidentified lenders. See Fed. R. Evid. 805 (requiring that each instance of hearsay meet one of the exceptions to the hearsay rule in order to be admissible); W. Insulation, LP v. Moore, 242 Fed. App'x 112, 121 (4th Cir. 2007) (unpublished) (holding that business records were inadmissible because the information contained within the business records was based on out-of-court statements).

Earhart alleges that the statements by the unidentified lenders are admissible under the residual exception of Rule 807. The admission of evidence under Rule 807 is only to be allowed in exceptional circumstances. Bouygues Telecom, S.A. v. Tekelec, 473 F. Supp. 2d 692, 696 (E.D.N.C. 2007) (citing additional cases). Rule 807 states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of

---

[1] To determine the admissibility of the statements of credit denial, the Court relies on Bedian's second affidavit. Countrywide moves to strike Bedian's second affidavit, and the Court addresses the motion to strike below. See infra VC.

5

the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807. Additionally, "[t]he notice requirements of the residual hearsay rule are strictly construed." United States v. Bradley, No. 5:09cr32-5, 2009 U.S. Dist. LEXIS 65087, at *10 (N.D. W. Va. July 28, 2009).

Earhart did not meet the exceptional circumstances that are required for admission of hearsay under Rule 807. Earhart offered no indication regarding the trustworthiness of information given by various unidentified lenders to Bedian. Earhart failed to explain how the statements of credit denial are more probative than the testimony from the lenders themselves regarding why they denied Earhart's loan applications. Earhart also failed to explain why the testimony from lenders could not be obtained through reasonable efforts. Last, Earhart failed to notify Countrywide of his reliance on Rule 807 and failed to provide the names and addresses of the specific lenders who supplied the information in the statements of credit denials. Therefore, the information contained within the statements of credit denials are not covered by any exception to the hearsay rule, and thus cannot serve as proof that his loan applications were denied as a result of Countrywide's breach of contract and alleged false reporting to the credit agencies. Accordingly, the Court denies Earhart's motion to reconsider as to the statements of credit denial under Rule 59(e).

    **B.**  **Whether the Court should consider testimony regarding the "refer with caution" message that Bedian received from the Desktop Underwriter**

In the reply brief, Earhart argues that the Court should consider Bedian's testimony regarding the "refer with caution" message that Bedian received after entering Earhart's credit information into the Desktop Underwriting System. The Underwriting System was used when Bedian attempted to refinance Earhart's property at 4500 Gaynelle Drive.

6

In Countrywide's summary judgment motion, Countrywide argued, inter alia, that Earhart failed to show how he lost profit on the personal residence he planned to construct. In Earhart's response brief, Earhart only addressed Countrywide's arguments concerning the Parkton Road subdivision without ever addressing the arguments concerning the profits lost when he was unable to refinance his home. Earhart now argues for the first time to admit information regarding the refinancing of his property at 4500 Gaynelle Drive, without any explanation for his tardiness. These facts and arguments were previously available and should have been raised by Earhart during the summary judgment briefing. Westport Ins. Corp. v. Albert, 208 Fed. App'x 222, 227 (4th Cir. 2006) (unpublished) (quoting Pac. Ins. Co., 148 F.3d at 403) ("A court should not grant reconsideration when the movant attempts 'to raise arguments which could have been raised prior to the issuance of the judgment' or 'to argue a case under a novel legal theory that the party had the ability to raise in the first instance.'"). For these reasons, the Court will deny Earhart's request to amend its summary judgment order to include information concerning the Underwriting System.

**C.  Whether the Court should consider Earhart's arguments regarding his proposed testimony at trial**

In Earhart's reply brief under the heading "Plaintiff's Testimony," Earhart asserts that he should be permitted to testify about certain subjects at trial. Earhart also responds to Countrywide's argument that he must provide testimony from a lender in order to proceed under an FCRA claim. These arguments are outside the scope of Earhart's initial motions that the Court agreed to reconsider. Additionally, Countrywide has not had an adequate opportunity to brief the Court on these issues. These matters will be addressed at a pretrial conference to be scheduled at a later date.

**IV.     MOTION FOR RELIEF FROM A FINAL JUDGMENT OR ORDER - RULE 60(b)**

Relief under Rule 60(b) is available for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovery evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Earhart argues under Rule 60(b)(1) that he was surprised by Countrywide's argument that Bedian's testimony constituted inadmissible hearsay because Countrywide's argument was raised for the first time in a reply brief filed thirteen days before trial.

Earhart submitted Bedian's testimony in his response to Countrywide's motion for summary judgment. Countrywide timely objected to Bedian's testimony in its reply brief, providing Earhart ample notice of the hearsay objection. Plaintiff never sought leave to file a surreply to oppose the objection. Rule 60(b) relief is not available for Earhart merely because Earhart did not anticipate Countrywide's hearsay objection. See Kirby v. Memphis Sec. Co., No. 1:01-cv-151, 2003 U.S. Dist. LEXIS 19927, at *21 (E.D. Tenn. Nov. 3, 2003) ("That a party was 'surprised' by the state of the law or the legal arguments advanced by the opposing party is not sufficient to warrant setting aside a default judgment" under Rule 60(b)). The Court therefore denies Earhart's motion to reconsider under Rule 60(b).

## V. MOTIONS TO STRIKE

### A. Appraisal report and affidavit of James Wright

Countrywide moves to strike the affidavit of James Wright and an appraisal report prepared by Wright. Earhart attached the affidavit and appraisal report to his response brief prepared in opposition to Countrywide's summary judgment motion.

In Countrywide's reply brief to its motion for summary judgment, Countrywide argued that the appraisal report is inadmissible hearsay and improper expert testimony. Earhart did not seek leave to file a surreply to address Countrywide's objection. Earhart later cited to the appraisal report and affidavit of Wright in his reply brief in connection with the motion for reconsideration and motion to certify. Countrywide then moved to strike the appraisal report as inadmissible hearsay and improper expert testimony. Countrywide also moved to strike the affidavit of Wright, arguing that Earhart never identified Wright as a potential witness and never deposed Wright prior to the conclusion of discovery. In Earhart's response brief, Earhart again ignored Countrywide's objections concerning the appraisal report. Earhart also states that he will submit Wright as an expert and make him available for a deposition if Countrywide requires that Wright testify as an expert regarding the value of the Parkton Road property.

Wright testifies in his affidavit that he is a residential appraiser that was hired by William Smith to conduct an appraisal of the Parkton Road property and that the appraisal was delivered to Smith on December 6, 2007. The appraisal report is being offered to show that the Parkton Road property appraised for $2 million in December 2007. (Doc. No. 16 at 7).

Rule 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

Fed. R. Civ. P. 26(a)(2)(A). Rule 702 of the Federal Rules of Evidence provides that if specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Pursuant to the Court's pretrial order, Earhart was required to designate his experts and provide expert reports by October 30, 2008. Earhart did not designate any experts, and discovery ended on December 30, 2008.

The evidence that Earhart seeks to introduce through the appraisal and affidavit of Wright constitutes expert testimony. See Tokio Marine & Fire Ins. Co. v. Norfolk & W. Railway Co., No. 98-1050, 1999 U.S. App. LEXIS 476, at *10 (4th Cir. Jan. 14, 1999) (unpublished) (referring to the appraisal report of damaged cars as expert testimony). As expert testimony, Earhart should have disclosed the expert to Countrywide. Additionally, Earhart does not argue that this is newly discovered evidence which could not have been presented before the Court rendered its summary judgment decision. The Court will not allow Earhart to introduce evidence that could have been raised prior to the Court's entry of summary judgment. Simpson v. Fahey, No.3:04cv611, 2007 U.S. Dist. LEXIS 96495, at *4 (E.D. Va. Mar. 27, 2007) ("Nor is it appropriate to allow a party to present new evidence in a motion to reconsider unless the moving party demonstrates that the new evidence could not have been presented before the Court rendered its decision."). The Court therefore grants Countrywide's motion to strike the appraisal report and affidavit of Wright. See Boring v. World Gym - Bishop, Inc., No. 06c3260, 2009 U.S. Dist. LEXIS 21061, at *7 (N.D. Ill. Mar. 17, 2009) (striking from the record expert testimony that was not properly disclosed pursuant to Rule 26(a)(2)(A)).

### B. Affidavit of Erica Lane

Countrywide moves to strike the affidavit of Erica Lane that Earhart filed as an attachment to his reply brief in connection with the motion for reconsideration and motion to certify. Lane notarized Earhart's mortgage documents.

Earhart again attempts to introduce evidence to the Court without explaining why the evidence was not presented before the Court rendered its summary judgment decision. Therefore, the Court strikes the affidavit of Erica Lane.

### C. Bedian's second affidavit

Countrywide moves to strike Bedian's second affidavit, which was filed a week after Earhart filed his reply brief in connection with the motion for reconsideration and motion to certify. In the affidavit, Bedian discusses how he contacted several lenders regarding Earhart's mortgage application. Bedian states that several of the unidentified lenders expressed interest in loaning Earhart money after speaking with Bedian, but all the lenders declined to proceed further once they received Earhart's mortgage application and credit report. Bedian's testimony regarding the statements told to Bedian by various lenders constitutes inadmissible hearsay; the statements of the unidentified lenders are being offered through Bedian for the truth of the matter asserted. Fed. R. Evid. 801(c). The Court cannot consider the inadmissible evidence to support Bedian's claim for lost profits. Fed. R. Civ. P. 56(e).

The affidavit was filed after the record was closed in this case and contains inadmissible hearsay statements. (Doc. No. 46 ¶¶ 8, 11- 12). The information contained within the affidavit is not based on newly discovered evidence. See Fed. R. Civ. P. 60(b)(2). Therefore, the Court grants Countrywide's motion to strike Bedian's affidavit.

### D. Earhart's reply brief

Finally, Countrywide moves to strike Earhart's reply brief filed in connection with the motion for reconsideration and motion to certify. In the motion to reconsider, Earhart only addressed the Court's decision to dismiss the lost profits claim. Earhart did not object to the Court's dismissal of the UDTPA claim. Although Earhart discusses the UDTPA claim in his motion to certify, Earhart later withdrew this motion. Because Earhart only addressed the lost profits claim in his motion to reconsider, the Court grants Countrywide's motion to strike Earhart's arguments in his reply brief concerning the UDTPA claim.

## VI. CONCLUSION

The statements contained within the statements of credit denial are inadmissible hearsay; Earhart cannot rely on inadmissible statements to prove his claim for lost profits. Therefore, the Court denies Earhart's motion under Rule 59(e). Earhart has also failed to make an adequate claim for relief under Rule 60(b). Therefore, the Court **DENIES** Earhart's motion to reconsider.

Earhart states in his reply brief that he withdraws his motion to pursue an immediate appeal. Thus, the Court need not address the issue of whether the Court erred in denying Plaintiff's motion to certify under Rule 54(b).

Last, the Court will not allow Earhart to continue introducing evidence which was available to Earhart before the Court considered Countrywide's summary judgment motion. Accordingly, the Court **GRANTS** Countrywide's motion to strike (1) Bedian's second affidavit, (2) Wright's affidavit, (3) Lane's affidavit, (4) the appraisal report and (5) the arguments in Plaintiff's reply brief concerning the UDTPA claim.

Countrywide filed two motions in limine to exclude newly raised theories and various forms

of evidence that Earhart intends to introduce at trial. (Doc. Nos. 30 & 31). Earhart did not file a response to these motions. The parties should be prepared to address these motions at the pretrial conference which will be scheduled at a later date.

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's motion to reconsider (Doc. No.41) is **DENIED**;

2. Defendant's motion to strike Jeff Bedian's affidavit (Doc. No. 47) is **GRANTED**; and

3. Defendant's Motion to Strike the appraisal report, Wright's affidavit, Lane's affidavit, the appraisal report, and the arguments in Plaintiff's reply brief concerning the UDTPA claim (Doc. No. 45) is **GRANTED**.

Signed: September 15, 2009

Robert J. Conrad, Jr.
Chief United States District Judge